A01A1945. GRAHAM v. THE STATE.
(554 SE2d 528)

PHIPPS, Judge.

Following denial of his motion for new trial, Tequan Graham appeals his convictions on two counts of felony theft by receiving stolen property. He challenges the sufficiency of the evidence to support his convictions and felony sentences, and he charges his trial counsel with ineffective assistance. We agree that the evidence is insufficient to support felony sentencing on one of the counts. Otherwise, we find no insufficiency in the evidence or ineffectiveness in trial counsel's performance. We therefore affirm Graham's convictions as well as his sentence on one of the felony counts, vacate the other sentence, and remand for resentencing as a misdemeanor.

Graham was accused of two counts of felony theft by receiving stolen property and one count of misdemeanor theft by receiving stolen property. Count 1 of the accusation charged Graham with felony theft by receiving stolen property by disposing of an electronic keyboard with a value exceeding $500, the property of Robin Ferguson. Count 2 charged him with misdemeanor theft by receiving stolen property by disposing of one videocassette recorder (VCR) with a value less than $500, the property of Heather Ludi. Count 3 charged him with theft by receiving stolen property by disposing of compact discs (CDs), movies, and a set of golf clubs with a value exceeding $500, the property of Dennis Yarman. The trial court granted Graham's motion for directed verdict on the misdemeanor count, and he was convicted on both felony counts.

Through the testimony of Yarman and David Conley (the owner of a pawnshop), the State sought to show that, on the day of the burglary of Yarman's residence, Graham pawned the CDs, movies, and golf clubs taken from Yarman. Through the testimony of Ferguson and Dariel Wilson (the manager of another pawnshop), the State sought to show that, two days after the burglary of Ferguson's residence, Graham pawned the electronic keyboard taken from Ferguson.

1. Graham challenges the sufficiency of the evidence to show his knowledge that the property he pawned was stolen or that the property was of sufficiently high value to authorize imposition of felony sentencing. He also claims that the evidence was insufficient to show that the items taken in the burglary of the Yarman residence were those pawned by him.

"A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner." While value thus is not an element of this crime, it is relevant for the purpose of distinguishing between a misdemeanor and a felony for sentencing. In this regard, OCGA § 16-8-12 (a) provides that a person convicted of this offense shall be punished as for a misdemeanor but if "the property which was the subject of the theft exceeded $ 500.00 in value," the crime may be punishable as a felony.[1]

(a) Ferguson identified the keyboard taken from her residence. She testified that it belonged to her employer, the DeKalb County Board of Education. A sticker affixed to it identified it as property of the board. Wilson identified this same keyboard as the keyboard pawned by Graham. Although Wilson testified that she had not noticed that the keyboard had a sticker on it when it was pawned, she acknowledged that the sticker may have been present. Whether the sticker was on the keyboard when it was in Graham's possession and whether its visibility was such that he would have or should have seen it were matters for the jury to resolve.

Construed in a light most favorable to the verdict, the evidence was sufficient to show that Graham knew or should have known that the keyboard was the property of the school board and thus had been stolen.[2]

(b) Yarman testified that an RCA VCR, a Pioneer CD player, a Sony cordless phone, 125 CDs, around 40 videotapes, and a set of King Snake golf clubs had been taken from his residence. On the day of the burglary, Graham pawned 60 CDs, 47 videotapes, an RCA VCR, a Pioneer CD player, and a telephone. The following day, Graham pawned a set of King Snake golf clubs. Conley's testimony authorized the jury to find that when asked to explain why he was pawning such an unusual assortment of items, Graham gave an evasive and misleading answer.

This evidence was sufficient to authorize the jury to find that the CDs, videotapes, and golf clubs pawned by Graham were those taken from Yarman. Whether Graham possessed the requisite guilty knowledge that the property was stolen was for the jury to decide.[3]

(c) Ferguson testified that the keyboard taken from her in 1999

[1] (Footnotes omitted.) *Baker v. State*, 234 Ga. App. 846, 847-848 (507 SE2d 475) (1998).
[2] See *Slaughter v. State*, 240 Ga. App. 758, 760 (6) (525 SE2d 130) (1999).
[3] See id.

had been purchased by the school board in 1996 for $950, that without an educational discount it would have cost $1,200 to $1,300, and that it would cost the school $1,100 to replace the keyboard with a comparable new model. Wilson testified that she would have sold the keyboard pawned by Graham for between $299 and $399.

"The cost of the property to the owner, although relevant on the question of value, is not the ultimate determinant."[4] Nor is the replacement cost.[5] "The value of property which is the subject of the theft is the fair cash market value either at the time and place of the theft or at any time during the receipt or concealment of the property."[6] The term "fair market value" has been defined as the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale.[7]

Ferguson testified only about the cost of the keyboard to the owner and the cost to replace it with a new model. Wilson testified that she would have sold the keyboard for less than $500, i.e., $299 to $399. Although Wilson acknowledged that pawnshops generally charge less for merchandise than do other retail establishments, it would require pure guesswork and speculation on the part of the jury to conclude that an item being sold for $299 to $399 at Wilson's pawnshop would have a fair market value exceeding $500. However, the evidence certainly supported a finding that the keyboard had some value. Therefore, we remand for misdemeanor sentencing on Count 1.[8]

(d) Evidence given by Yarman, Conley, and a golf professional employed by the Druid Hills Golf Club authorized the jury to find that Yarman's golf clubs had a fair market value as low as $150 and as high as about $400, and that the 47 videos and 60 CDs had a fair market value of at least $3 each. This evidence was minimally sufficient to show that the combined value of the property exceeded $500.

2. Graham complains of ineffective assistance of trial counsel in numerous regards.

"To establish ineffectiveness, [Graham] must prove that his trial counsel's performance was deficient and but for the deficiency there was a reasonable probability the result of the trial would have been different. [Cits.]"[9] Trial strategy and tactics do not equate with ineffective assistance of counsel.[10]

---

[4] (Footnote omitted.) *Baker*, supra at 848.

[5] See *Fewox v. State*, 243 Ga. App. 651 (534 SE2d 121) (2000).

[6] (Footnote omitted.) *Baker*, supra.

[7] See *Macon-Bibb County Bd. of Tax Assessors v. J. C. Penney Co.*, 239 Ga. App. 322, 323-324 (1) (b) (521 SE2d 234) (1999).

[8] *Denson v. State*, 240 Ga. App. 207, 208 (2) (523 SE2d 62) (1999).

[9] *Cloud v. State*, 235 Ga. App. 721, 723 (6) (510 SE2d 370) (1998).

[10] *Phillips v. State*, 233 Ga. App. 557, 559 (504 SE2d 762) (1998).

(a) Graham charges his trial attorney with ineffectiveness in failing to object to the admission in evidence of a letterhead stolen from the Druid Hills Golf Club. Graham previously worked at the Druid Hills Golf Club but did not have access to its letterhead stationery. He argues that admission of this document prejudiced his defense, because he otherwise would have shown that he used a Druid Hills Golf Club letterhead to advertise his services pawning property for third parties. We find no prejudice. Had the letterhead been introduced by Graham, the State could have shown that he could have obtained it only by theft.

(b) Graham claims that trial counsel was ineffective in failing to interview Yarman and Conley before trial. Because counsel testified that she was not surprised by their testimony, and because Graham has not shown how counsel's questioning of these witnesses at trial might have been different had she talked to them beforehand, we again find no prejudice to the defense.

(c) Graham contends that trial counsel was ineffective in failing to object when a police detective testified that Graham was the main suspect in a line of cases which included the burglary of Ludi's residence. Because Graham was being tried for the Ludi burglary under Count 2 of the accusation, the detective's testimony was admissible.

(d) Graham complains of trial counsel's failure to object when the prosecutor commented in closing argument that the State originally had charged Graham with burglary but had reduced the charge to theft by receiving because it could not prove his commission of the former crime. At the hearing on Graham's motion for new trial, counsel explained that she raised no objection because she thought that proof of the State's inability to prosecute him for burglary was beneficial to the defense. This decision amounted to one of trial tactics and strategy which did not constitute ineffective assistance.

(e) Finally, Graham claims that trial counsel was ineffective in not asking the court to instruct the jury to disregard evidence relating to Count 2 of the accusation. The trial court did, however, repeatedly instruct the jurors that Count 2 had been taken from their consideration and that they would be deliberating only on Counts 1 and 3. We find no reasonable probability that Graham would have been acquitted if the additional charge had been given.

*Judgment affirmed in part and vacated in part and remanded for resentencing. Smith, P. J., and Barnes, J., concur.*

DECIDED AUGUST 27, 2001 — ▇▇▇▇▇▇▇▇▇▇

*Maria Murcier-Ashley*, for appellant.
Tequan Graham, *pro se.*

*J. Tom Morgan, District Attorney, Robert M. Coker, Andrette Watson, Assistant District Attorneys*, for appellee.